## SENTENCING MEMORANDUM
### (United States v. Christopher J. Phillips
### Criminal Action No. 07-91-SLR)

### Introduction

Defendant, Christopher Phillips, submits this memorandum in support of a sentence well-below the applicable guideline range, which the Presentence Officer initially projected to be 262 to 327 months.   Note, the statutory maximum is 20 years (i.e., 240 months), while the mandatory/minimum term of incarceration is 5 years. 18 U.S.C. § 225 A (a) (1) and (b) (1). Mr. Phillips submits that under the facts and circumstances of this case, a sentence at the mandatory/minimum term of 5 years is sufficient, but not greater than necessary, to accomplish the sentencing goals advanced in 18 U.S.C. § 3553 (a). Alternatively, Mr. Phillips submits that the unique and exceptional circumstances of this case support a downward departure or variance beneath the statutory maximum of 20 years. Clearly it is anomalous that a statute with a 20 year maximum term of incarceration could be interpreted by the Sentencing Commission to result in a guideline sentence two to seven years beyond the statutory maximum for a defendant with zero criminal history points.

### The Offense Conduct

The evidence of record suggests that after developing a relationship with Paul Thielemann over the course of several months, Christopher Phillips was manipulated by Thielemann into simulating sexual contact with his young daughter while Thielemann watched the activity via webcam during an on-line chat. It appears that this was an isolated, one-time offense which Mr. Phillips immediately regretted and repudiated.

Upon his arrest, Mr. Phillips cooperated fully with the investigators, accepting responsibility for his actions. The defense is unaware of any illicit sexual material having been recovered from Mr.

Phillip's computer.

## **History and Characteristics of Defendant**

(a) <u>Turner Report</u>

Attached as Exhibit "A" for the Court's consideration is a psychological evaluation of Mr. Phillips performed on March 13, 2008 by Dr. Alvin L. Turner, a licensed psychologist. The history recited in Dr. Turner's report is remarkable for the "severe abuse" suffered by Mr. Phillips when he was six or seven years old at the hands of his mother and heroin-addicted stepfather. The abuse included "forced oral sex with his stepfather that occurred numerous times," and a "conflicted relationship" with his mother who Mr. Phillips described as physically abusive, "at times breaking bones and biting him." (See Turner Report, p. 6). Note, the abuse was confirmed by Mr. Phillips' sister, Tara Tinjen. (Turner Report, p. 3). Dr. Turner concludes that as a consequence of the severe physical and sexual abuse he suffered as a child within his family, Mr. Phillips exhibits "pathological dependence, extreme suggestibility, and a feeling of being permanently damaged." In Dr. Turner's opinion, Mr. Phillips' tendency to regress, to become dependent, and to try to satisfy the needs of another from whom he desperately wanted acceptance began during the critical early period of his life when he was abused repeatedly by his stepfather. (Turner Report, p. 8).

It is submitted that Dr. Turner's assessment and conclusions are consistent with the evidence of record which suggests that the instant offense was committed by Mr. Phillips essentially to curry favor with Mr. Thielemann. Indeed, Mr. Phillips has indicated that he met Mr. Thielemann at a particularly low period in his life following the break-up of a relationship with a woman who flaunted her infidelity to Mr. Phillips, calling him "worthless."

Dr. Turner concludes that Mr. Phillips exhibits "a low risk of sexual violence" and that he would benefit from treatment for the complex traumatization that occurred early in his life. He notes

the many resources which could be used in such treatment, and recommends psychoeducational treatment combined with psychotherapy. Clearly, in Mr. Phillips' case, the treatment needs exceed the need for punishment.

(b) <u>Family Support</u>

Attached as Exhibit "B" are letters from Mr. Phillips' sister, nieces, nephew, stepmother and mother which express their unwavering support for Mr. Phillips, and reflect that the offense was an isolated incident and completely out of character.

<u>**Analysis**</u>

While a correct guideline calculation is the "natural starting point" from which a sentencing court exercises its discretion under § 3553 (a), if after calculating the appropriate Guidelines, a district judge finds that the imposition of a within-Guidelines sentence would visit an injustice upon the defendant pursuant to 18 U.S.C. § 3553 (a), it is incumbent upon the judge to say so, and sentence below the Guideline range.  <u>United States v. Fisher</u>, 502 F.3d 293, 308 (3d Cir. 2007).  See also, <u>United States v. Langford</u>, 2008 WL 466158 (C.A.3 (Pa)). Indeed, in <u>United States v. Gall</u>, 128 S. Ct. 586 (2007), the Supreme Court reinforced a district court's discretionary authority to choose the substance of a sentence.  Moreover, a sentencing court may not presume that a guideline range is reasonable.  <u>United States v. Gall</u>, 128 S. Ct. @ 596-97.

Here, as noted, the guideline calculation of the Presentence Officer results in a guideline range substantially greater than the 20-year statutory maximum for a defendant such as Mr. Phillips with zero criminal history points. Moreover, inherent in the guideline calculation is the suggestion that Mr. Phillips' single offense merits the same sentence as that of a professional producer/distributor of child pornography.  Defendant submits that such sentence would be grossly unjust and would ignore the "overarching instruction" of § 3553 (a) to "impose a sentence sufficient,

but not greater than necessary" to accomplish the goals of the sentencing statute. <u>Kimbrough v.</u>
<u>United States,</u> <u>supra</u> 128 S. Ct. @ 575.

As far as the remaining relevant statutory sentencing factors are concerned, it is submitted
that a sentence at the five year mandatory/minimum is sufficient to comply with the goals of the
sentencing statute, which include: the need to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; the need to afford adequate
deterrence; the need to protect the public from the defendant; and the need to provide the defendant
with treatment. § 3553 (a). Clearly, as Dr. Turner's report suggests, Mr. Phillips' treatment needs
exceed the need for punishment. Indeed, the five year mandatory/minimum term of incarceration
is a severe punishment for a first offender who suffers from obvious psychological disabilities. Such
a sentence will serve to balance the retributive needs of the statute against Mr. Phillips' treatment
needs in a way which promotes justice.

### Conclusion

For the forgoing reasons it is respectfully submitted that a sentence at the
mandatory/minimum is sufficient to comply with the goals of the sentencing statute. While it cannot
be disputed that Mr. Phillips committed a very serious offense which requires just punishment,
clearly the offense was borne of a horrendously abusive childhood which led to "extreme
suggestibility" and a tendency to "try to satisfy the needs of another from whom he is desperately
wanting acceptance." His conduct merits just punishment measured with a large dose of
compassion.

Respectfully submitted,


/s/ Raymond M. Radulski
Raymond M. Radulski, Esquire
Delaware Bar No. 332
Legal Arts Building, Suite 301
1225 North King Street
Wilmington, DE 19801
(302) 658-9388
Attorney for Defendant
Christopher J. Phillips


Date: April 1, 2008

EXHIBIT A



**Dr. Alvin L. Turner**
Licensed Psychologist
2100 Baynard Blvd.
Wilmington, Delaware 19802
(302) 777-3202    Fax (302) 777-4752
alvin55@earthlink.net

## PSYCHOLOGICAL EVALUATION

| | |
|---|---|
| Name: | Christopher Phillips |
| Date of Birth: | June 7, 1977 |
| Date of Evaluation: | March 13, 2008 |
| Age: | 30 |
| Gender: | Male |
| Marital Status: | Divorced |
| Description: | White |
| Place of Employment: | Presently incarcerated |
| Psychologist: | Alvin L. Turner, Ph.D. Licensed Psychologist |
| Date of Report: | March 23, 2008 |

REASON FOR EVALUATION:

Christopher Phillips was referred by his attorney, Raymond M. Radulski, Esq. Christopher is currently incarcerated in Salem County Prison and is facing a sentencing date in connection with criminal charges involving distribution of child pornography over the internet. Digitally Christopher admitted that he simulated sexual contact with his young daughter at his co-defendant's request while the co-defender watched via a web cam. Christopher has no prior criminal history. A

RE:  Christopher Phillips        - 2 -           March 23, 2008

psychological examination was requested by Mr. Radulski for

possible utilization for mitigation purposes at sentencing.

RELEVANT BACKGROUND INFORMATION:

Christopher Phillips was a middle child of five siblings

and was primarily raised by his natural mother and grandparents

on his mother's side.  The main source of income for his family

was his mother's job along with welfare payments and child

support payments after his mother and father were divorced.

Christopher attended both public and parochial schools and

remembers being afraid of school and did not want to go.

However, he rarely got into trouble, got along well with all of

his teachers, and generally received average grades.

Christopher described himself from ages five to 13 as nervous,

shy, lonely, and fearful.  He had no friends.  Between the ages

of five and 13, Christopher's parents were divorced, and after

his mother remarried, he describes extreme physical abuse by his

mother and sexual and physical abuse by his stepfather.  While

in high school he did not engage in school activities and was

afraid that he would not fit in, but received average grades.

He had special classes for a learning disability and dropped out

of school in the eleventh grade.  Christopher began working full

time before the age of 17 and has had three different full time

jobs since leaving high school.  He has been working in his

RE:  Christopher Phillips        - 3 -        March 23, 2008

current job for over nine years as a receiving manager for Lowe's Department Store.  Christopher is currently divorced after being married twice, and he has also had at least one two-year relationship.  He has fathered three children.

Medical History and Health:

Christopher Phillips is not currently being treated for any disease or disorder.  Additionally, he does not complain of any symptoms that should be treated by a medical doctor.  He smoked cigarettes for less than five years but currently is a nonsmoker.  Christopher drinks alcohol occasionally, but does not report the use of any illegal drugs.  He reports, however, that his mother was an alcoholic during the time he was being raised by her, and his sister, who he reported was also physically and sexually abused by their stepfather, has been treated for psychological problems.

EVALUATION PROCEDURE:

1. Review of the Following Documents:

    a. Affidavit of Probable Cause

    b. Police Report

    c. Transcripts of Computer Conversations between Christopher Phillips and his co-defendant

    d. Plea Agreement between Christopher Phillips and the United States Government

RE:  Christopher Phillips          - 4 -          March 23, 2008

  e. Information charging the offense to which Christopher

    Phillips ultimately pled (simulation of sexual contact

    with his daughter)

2. Clinical Interview

3. Mental Status Evaluation

4. Completion of Personal History Checklist for Adults

5. SVR-20 to assess risk of sexual violence

RESULTS OF EVALUATION:

  Christopher Phillips was interviewed while incarcerated in
the Salem County Federal Penitentiary.  He was clearly depressed
and described himself as shy, lonely, tired, fearful, and
unhappy.  He is currently having nightmares of being choked by
someone, and he appeared to be ashamed, embarrassed, and fearful
during the time he was talking with me.  He cried freely, and
there were many observed signs of anxiety in the interview
including problems in attention, an apprehensive manner, and
physical indications.  He reported symptoms of depression
including poor appetite, guilt, sleep disturbance, fatigue, and
weight loss.  Christopher Phillips' primary facial expression
during the interview was worried and sad, and the quality of his
speech was emotional, hesitant, and soft.  Christopher Phillips
defined his problems as severe, but he has sought no
professional help previously.  Thought processes were

RE:  Christopher Phillips          - 5 -          March 23, 2008

distracted, circumstantial, and sometimes evasive, and his
thought content was preoccupied with guilt, worthlessness, and
his presenting problem.  He reports never having talked about
his physical and sexual abuse as a child and had real difficulty
understanding the relationship between his own abusive history
and the charges he is facing.  Christopher Phillips' thought
content was free from delusions, obsessive thoughts, or phobias,
and he did not report unusual perceptual experiences.  There
were no reported disturbances in consciousness or hallucinatory
experiences, but it is clear that his attention and
concentration are moderately impaired.  Christopher was oriented
in all spheres at the time of his interview with me with memory
functions intact and no reports of amnesia.  Estimated range of
intellectual ability is average, and fund of information appears
consistent with his background.  Abstracting ability appears
normal, but judgment is severely impaired.  His general
behavioral tone was immature, and he displayed a dependent
personality characteristic that appears somewhat pathological.
In spite of the charges against him, Christopher Phillips does
not have a history of legal problems, does not have a history of
violent acts, and has no current violent ideation.  He does not
have an aggressive demeanor, but has strong tendencies toward
dissociation and regression, denial and projection that are

RE:  Christopher Phillips          - 6 -          March 23, 2008

related to a long history of sexual and physical abuse within
his family system.

   Christopher Phillips has long recognized that he has severe
emotional problems.  He has felt trapped, broken, and
frightened, and he learned to use the computer to regress into a
fantasy world to escape his severe psychological and emotional
problems.  Between the ages of six and seven, he reports
experiencing forced oral sex with his stepfather that occurred
numerous times and a conflicted relationship with his mother
whom he described as physically abusive, at times breaking bones
and biting him.  His extreme victimization was supported by a
phone conversation with his sister who was also similarly abused
within the family system.  As a consequence of the severe abuse
which occurred within his family system, Christopher Phillips is
suffering from a complex developmental dissociative
traumatization which is often associated with disorganized
attachment and has created problems with his capacity for
developing attachment bonds with his children, affect
regulation, behavioral control, cognition, self-concept, and is
co-morbid with severe anxiety and depression.  He did not seek
treatment because he believed that nobody can understand the
meaning of his experience, and his secrecy and isolation has
increased his guilt, feelings of ineffectiveness, and belief

RE:  Christopher Phillips          - 7 -          March 23, 2008

that he is permanently damaged.  Making computer contacts became

part of a self-soothing strategy which although it was

ineffective, it satisfied for a short time, emotional emptiness

and allowed for a temporary escape of his despair and

hopelessness.  Christopher Phillips, using the computer, was

able to create a sense of unreality and feelings of being

disconnected from himself and his environment.  He has a great

deal of difficulty with social relationships, and although he

appears to crave or has a desire for intimacy, he has a history

of choosing mechanical or abstract tasks such as computer games

and a history of trying to satisfy his needs for sexual

experiences using the computer.

CONCLUSIONS AND RECOMMENDATIONS:

    In spite of the seriousness of the charges facing

Christopher Phillips, he has a low risk of sexual violence and

could benefit from treatment for complex traumatization that

occurred early in his life.  He has many resources which could

be used in treatment including a capacity for developing social

relationships (he has had a number of long-term relationships),

freedom from substance use problems, history of long-term and

stable employment, adequate communication skills, and attitudes

that do not support or condone offenses.  Additionally, he does

not have suicidal or homicidal ideation, he is not engaged in

RE:  Christopher Phillips          - 8 -          March 23, 2008

physical harm to victims, and there is no indication or presence

of multiple offense types or high density offenses.  It is

clear, however, that as a consequence of his severe physical and

sexual abuse as a child within his family, this has led to

pathological dependence, extreme suggestibility, and a feeling

of being permanently damaged.  He easily regresses into a

fantasy world where his damaged boundaries do not allow him to

readily determine behavior that is right or wrong or appropriate

or inappropriate.  Consequently, he is in need of monitoring and

supervision, and assistance in learning to develop the necessary

social and interpersonal skills that will enable him to satisfy

his needs through healthier relationships.  Christopher Phillips

was raised in a family where he was groomed by his stepfather to

push his own boundaries aside (he knew what to say and how to

say it) and consequently learned that the terms right and wrong

were meaningless.  Consequently, his tendency to regress, to

become dependent, and to try to satisfy the needs of another

from whom he is desperately wanting acceptance, began during this

critical early period of his life.  He does not fully understand

the relationship between his abuse as a child and his current

behavior, and because of this confusion he experiences himself

as more of a victim than a predator.  Psychoeducational

treatment combined with psychotherapy should allow him a fuller

RE:  Christopher Phillips          - 9 -          March 23, 2008

understanding of the relationship between his victimization and his current charges that hopefully will lead to a greater sense of responsibility for his behavior.

Thank you for your referral of this client.  I am available for further consultation at your convenience.


ALT:ckm

EXHIBIT B

TARA Tingen
27886 Paradise St
Georgetown De. 19947

WILMINGTON DE 197

22 JAN 2008 PM 2 L



Raymond M. RAdulski
1225 N. King St
#301
Wilmington De. 1980l

9801+3238

Dear Your Honor,

I have known my brother Christopher Phillips my whole life. I have watch him change as he grew up just as I changed. When we were young bad things happened to us from our step dad. We both went through traumatizing times. Christopher has always been a good guy. He always did the right thing. He has always provided for his daughter he had the same job for over nine years. He has always been the type of person that if you needed help no matter what was going on in his life he drop what he was doing and come and help you. He has never given me any reason or sign that I would not be able to leave my kids with him. I trust him more then anyone in my life with my children. Trust me when I say I do not condone the conversation he had with Theilman but I do believe that he is sorry. I know at the time of the conversation he was severely depressed and in an impressionable state of mind. I do believe with all my heart in second chances for anyone. I believe he made a mistake I know he has been honest with everyone since day one. I only hope that you see him as I do and others do in his life he is a good man. Please give him a chance to prove that he is. I don't believe that he should be kept in jail.

I think he should be able to come home and provide for his daughter financially as he did before all this happened. I believe and know that he is more than willing to voluntarily go to counseling for this and the abuse he went through as a child to deal with all of this. I also know he would voluntarily do supervised visits with his daughter just to prove he would never hurt her. I believe in him. I believe he made a mistake as some good people do. I believe that if you let him come home he would not let you down. I believe he would really & truly show you that he is not a lost cause he is a good man. Your Honor from the bottom of my heart I am begging you to give him another chance at life. He has never been in trouble before he has always been an upstanding citizen and has always done right by everyone. I see remorse in his eyes and I know he would not ever hurt anyone. Just give him a chance Please. I will do anything to help him. I will answer any questions about him. I have never seen him do anything out of the ordinary to anyone. My kids are all heart broken and want to help him come home also. Please see he is a good man.

Thank You

J. Tingen
27886 Paradise St.
Georgetown De. 19947

WILMINGTON DE 197

22 JAN 2008 PM 3 L



Raymond M. Radulski
1225 N. King St
# 301
Wilmington De. 19801

.19801+3238

Jesse Tingen
27886 Paradise st
Georgetown De.19947

Dear Your Honor,

I am writing you this letter about my uncle Chris. I am 11 years old and my name is Jesse Tingen. My uncle Chris is the best person I have ever known. He has always been there to help my mom. He has shown me how to do things when we were remodeling our new house, my mom and dad bought. I use to help him measure stuff and put it together. My mom let me stay with him all by myself and work like a big guy. She let me go to philadelphia with him. My uncle is a cool guy and I hope to be like him when I grow up. I miss him a lot and really want him to come home soon. He is not a bad person he has never been mean or done anything bad to me or any of my sisters. I have never seen him get in trouble not even from my mommom. He has always shown me right from wrong and I have always looked up to him. Please could you let my uncle come home pretty please. I would be very thankful if you did. I worry everday about my Uncle Chris being in jail because I am scared some one might hurt him. He has never hurt anyone and I don't think he should be there anymore he has been in jail for a year and I think you should let him come home pretty pretty please. I love him very much and would like to see him.

Thank You
Jesse Tingen

Jesse Tingen

P.S: Please let my uncle Chris come home Please please let him come home.

T. Tingen
27886 Paradise St
Georgetown De. 19947

WILMINGTON DE 197

22 JAN 2008 PM 3 L



RAymond.M.Radulski
1225 N. King St
#301
Wilmington De.19801

.9801+323A

Tiffany-Marie Tingen
2788 Paradise St.
Georgetown De.19947

Dear Your Honor,

My name is Tiffany-Marie Tingen I am writing to you about my My Uncle Christopher Phillips. I am fourteen years old and I go to Sussex Central Middle school. I have none my uncle Chris my whole life and he has always been nothing but good to me. He has always been there for me when I have been scared or upset. If I ever needed anyone I would call him. There were plenty of time that I have been alone with him and hung out with him and he has never done anything bad to me. My mom said he is in jail for doing things to kids he shouldn't be doing. I would like to say that I don't believe that. He has always been a cool uncle. He would always tell us right from wrong. I know his biggest speech was always about respecting my mom. You see my uncle never was in trouble he never made troubled or did things that were wrong. I must say that I have always looked up to my uncle Chris. I use to tell my mom when I get older I hope to find a boyfriend like him because he has always been kind and understanding. My Uncle Chris has always helped my family when we needed it. One time we didn't have a place to live when my daddy came off of active duty military and went into the national gaurd and my uncle Chris let us stay with him until we found a place to live. he didn't have much room but he made room for us. he is so awesome. I think that you should see that he has always been a good person. I was talking to my mom about why you can't let him come home. Why you can't just make him get counseling for the bad things that happen to him when he was little. My mom said I had to tell you this because my mommy can't give my uncle Chris what I want him to do only you can. My uncle Chris is missed so much my twin sisters cry all the time. everyone in our family misses him. He has been in jail for a year we can't see him or talk to him and it sucks. I know my uncle Chris talked to a bad guy on the computer and I know he didn't mean to I only hope that you see what he did was a mistake. I hope you know he would never do it again. I know my uncle would be greatful to you if you let him please come home. I love him and I know he would never hurt any kid. My mommy told me about when she and uncle Chris was young a guy they trusted did things to them that he shouldn't of and made them do things they didn't want to and told me if anyone ever did stuff like touch me where they shouldn't or tried to make me touch them in there private area's I am suppose to tell. Well no one has ever done that to me and if that is what My Uncle is in trouble for I don't think he would ever do that. He has always made sure we were safe and had safe things. He is cool like that. Please your Honor give him another chance let him come home and be with us. Let him do counseling. let him see us please we love him and we miss him.

Thank You
Tiffany-Marie Tingen

*Tiffany-Marie Tingen*

M. Tingen
27886 Paradise St
Georgetown De. 19947

WILMINGTON DE 197

22 JAN 2008 PM 3 L



Raymond M. Radulski
1225 N. King St
#301
Wilmington De. 19801

.19801+3238

Melanie Tingen
27886 paradise st
georgetown de 19947

Dear Your Honor,

I am theresa twin sister melanie we are the same age 9 years old. I am asking you if you could let my uncle come home. he is really cool he always stops everyone from picking on me and calling me names like dizzy blondie. he always made sure we didnt get into trouble. I love him very much my sister and me always pray to god every night that he can help let uncle chris come home. he has never been bad.  he always tells us we have to be nice and be good to our mommy. my uncle chris never got into trouble my mommom never yelled at him like she does to my uncle Joey for doing dumb things. could you please let my uncle come home he has been grounded for a long time I think he learned his lesson. please let him come home pretty please with a cherry on top. could you tell my uncle chris I love him and I miss him very much.

Thank You
Melanie Tingen

Melanie Tingen

T. Tingen
27886 Paradise ST
Georgetown De. 19947

WILMINGTON DE 197

22 JAN 2008 PM 3 L



Raymond M. RAdulski
1225 N. King St
# 301
Wilmington De. 19801

19801+323&

Theresa Tingen
27886 Paradise st
Georgetown De 19947

Dear Your Honor,

My name is Theresa Tingen and I am 9 years old, My uncle Chris is a good guy. He told me that it was wrong for wanting to beat up the people who put him in Jail. I want him to come home. I miss him and cry everday to see him. My mommy won't take me to jail to see him. Because she said that she doesn't want me to see my uncle Chris in that place. He is a good boy and has never done anything bad. As long as I have known my uncle chris he has always been good he always tells us we need to be good to my mommy. I love my uncle and want him to come home. could you please let him. my mommy said only you can tell uncle chris what he is allowed to do now. I hope that you tell him to come home and don't do anything bad ever again. he has been gone for a long time now and that is longer then i get grounded for. I think he learned his lesson please let him come home I am asking very nice and using my please and thank you's can you tell my uncle that so he knows I am being nice. he always tells me I have to be nice to people if I want them to be nice back. thank you for reading this and I hope you let him come home to us

Thank You

Theresa Tingen

Mary L. Phillips
3426 N. Front St.
Philadelphia Pa.
          19140

PHILADELPHIA PA 191

22 JAN 2008 PM 7 L

Raymond Radulski
1225 N. King St. #301
Wilmington DE.
          19801

19801+3238

01/19/08

Dear Your Honor,

Re: Christopher Phillips

I have known Christopher for
approximately one year and a half
as I am his stepmom.
I can confirm that he is a man
who is extremely dedicated to his
family and working to make a
living for his daughter.
Furthermore I find him to be a
very honest and devoted father.
When I first met Christopher it
was the day his father and I
were married. I saw Christopher
to be a very caring person and
it was very clear that his
daughter loved him very much
too. I would say Christopher is
a very trustworthy and easy
going young man. He is truly
sorry for the one conversation
on the computer with the co-defendant

He does realize that he made
a huge mistake by ever having
the conversation. He is a good
person and only wants to care
for his daughter. He would
like the opportunity to get his
life back he is truly remorseful.
He only wants to be able to
provide for his daughter. We
love him and know that he can
turn this around and make a
good life for his daughter and
himself.
Thanks so much for your time
in reading this.

Sincerely,
Mary L. Phillips

MArgaret HAzel
27720 Devon DR.
Millsboro De. 19966

WILMINGTON DE 197

07 FEB 2008 PM 1 T



RAymond RAdulski.
1225 N King St
Wilmington De. 19801

19801+3233

Dear Your Honor,

My name is Margaret Hazel I am writing on behalf of my son Christopher Phillips. I would like to start off by saying he is a good man. He has never been in trouble a day in his life. He has always been the first person to help someone out in need. He has always worked hard his adult life. Before all of this happened he had a job he worked at for about Ten years. He had a house, cars, ect. Since his arrest on March 6th, 2007 He has lost just about everything he worked so hard to establish for himself. His daughter has not received any child support since all this happened. My son was always one to make sure she had what she needed no matter what the cost. If she needed it she would get it. I have not seen my son since March 2007 due to the fact I cannot afford to travel to see him, not to mention the fact I am terrified of bridges. I am so worried about him. I know at one time he was severely depressed and not in his right state of mind and I believe this is why this incident did occur. If you talk to anyone who knows him they will inform you that Christopher really is a good person. He has always been kind, understanding, caring and helpful. My grand children all love him dearly. If you could please consider giving him a suspended sentence with mandatory counseling, probation with seeing probation officer every week if necessary. Supervised visitation with his daughter. Must get his education, I know you would not be making a mistake. I know if this happens he would do everything you ask of him. Please give him a chance at life. Please let him come home. Give him a chance to prove how good of a man he is. I beg of you.

Thank You